# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

**WENDY MATTHEWS,**

            **Plaintiff,**

**v.**                                                              **Case No. 8:08-cv-02116-T-17-EAJ**

**SPRING LAKE NC, LLC,**

            **Defendant.**

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's motion for summary judgment (Dkt. 10), and Plaintiff's response thereto, which includes several documents filed in support of her response. (Dkt. 13—19). For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

Plaintiff, Wendy Matthews ("Matthews"), filed a complaint against Defendant, Spring Lake NC, LLC ("Spring Lake"), on October 21, 2008. (Dkt. 1). Matthews' complaint alleges that Spring Lake violated the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* ("FMLA"), when Spring Lake terminated Matthews' employment on July 23, 2008. (Dkt. 1). Spring Lake filed an answer to the complaint on November 11, 2008, in which Spring Lake denied Matthews' allegations and set forth several defenses, primarily that Matthews' termination was not in violation of the FMLA. (Dkt. 7). Subsequently, Spring Lake filed its Motion for Summary Judgment and Incorporated Memorandum of Law pursuant to Federal Rule of Civil Procedure 56

(c). (Dkt. 10). Spring Lake argues that judgment as a matter of law is appropriate because the undisputed facts show that Matthews' termination was based on her violation of Spring Lake's Absenteeism and Tardiness Policy and not a result of a potentially FMLA-qualifying need for leave. *Id.* Matthews filed her opposition to Spring Lake's motion on August 24, 2009, in which she argued there are material facts in dispute which should be determined by a jury. (Dkt. 13). The following facts were taken from the depositions, exhibits, and affidavits in the record.

Spring Lake is a nursing and rehabilitation facility located in Winter Haven, Florida. Spring Lake maintains several personnel policies which are detailed in Spring Lake's employee handbook. Employees are given this handbook at their hiring orientation and are instructed to read and familiarize themselves with the policies. They are also required to sign an acknowledgment form stating that they have read and agree to abide by the policies and procedures contained within. Among the policies and procedures listed in the handbook are Spring Lake's Absenteeism and Tardiness Policy and an FMLA policy.

The Absenteeism and Tardiness Policy states Spring Lake's expectation that employees arrive to work on-time for their scheduled work days. This policy allots employees a certain number of "occurrences" before they are reprimanded for violating the policy. An "occurrence" is defined as each day of absence or every third tardy. [1] "If an employee is absent for reason of personal illness, documented by a physician, the consecutive days of absence will be treated as a single occurrence." The handbook states how the policy operates:

"Generally the absenteeism/tardiness policy work [sic] like this:

---

[1] Tardiness is defined by the handbook as, "Reporting to work after the start of an assigned period, leaving work before the end of the work period, or returning late from a break or meal period. Each three instances of tardiness will be considered one occurrence."

- Six occurrences of absence in a rolling 12-month period: Initial Written Warning
- Eight occurrences of absence in a rolling 12-month period:2$^{nd}$Written Warning which could lead up to and including termination

  Ten occurrence [sic] of absence in a rolling 12-month period: Termination"
Employees who are to be absent from a shift are required to call their designated supervisor and notify them of the absence at least two-hours prior to the beginning of their shift. Employees who miss work for more than one day because of a doctor's order must advise their supervisor of when they expect to return to work.

The handbook also describes Spring Lake's FMLA policy which states an employee is eligible for FMLA leave if they have been employed for at least twelve-months and have worked at least 1,250 hours during the twelve-month period before the start of leave. The policy requires employees exercising their rights under the FMLA to give a thirty-day advance notice or such notice that is practicable. It also requires that a FMLA form be filled out and signed by the employee prior to the date of leave.

Matthews was hired by Spring Lake as a Certified Nursing Assistant and worked the 11:00 p.m. to 7:00 a.m. shift from June 12, 2007 to July 23, 2008. Matthews was given a copy of Spring Lake's employee handbook during her orientation by Spring Lake's Human Resources Director, Audra Stone; both Matthews and Stone signed the employee acknowledgment form on June 12, 2007. During her first year of employment, Matthews received one written warning regarding her non-compliance with the Absenteeism and Tardiness policy. This warning reflected a total of thirteen occurrences that happened between April and May of 2008 and suggested that continued violation of the policy could result in further disciplinary action.

In March or April of 2008, Matthews became pregnant. While there is a dispute regarding when and how Spring Lake's management was notified of her pregnancy, all of Matthews' direct supervisors were, at some point, aware of her pregnancy.[2] Matthews states that she experienced complications throughout the pregnancy and, as a result, missed several days of work. Matthews provided Spring Lake with doctor's notes excusing her of those absences.

On July 11, 2008, Matthews was admitted to the hospital and placed on bed rest which caused her to miss a total of six days of work.[3] Like the instances before, Matthews provided Spring Lake with a doctor's note to excuse those absences. Matthews returned to work on July 22, 2008, but was instructed to go home and telephone Art Hutchins, the Director of Nursing, the following day. Matthews did so and returned to Spring Lake for a meeting with Hutchins. Hutchins was unavailable so Sheila Samarippas, Matthews' direct supervisor, met with Matthews and terminated her for excessive absenteeism.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323—324 (1986). That

---

[2] *See* Hutchins Depo 24—25:24—7; Stone Depo. 50:18—22; Boyd Depo. 9:8; Samarippas Depo. 9:14.

[3] Matthews was absent from work on July 11, 2008 and July 14 thru July 18, 2008.

burden can be discharged if the moving party can show the Court there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325. When the moving party has discharged its burden, the nonmoving party must then designate the specific facts showing that there is a genuine issue of material fact.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson,* 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248; *see also Hickson Corp. v. Crossarm Co.,* 357 F.3d 1256, 1259—1260 (11th Cir. 2004). In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 2004). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

The FMLA provides substantive rights to eligible employees including the right to "a total of 12 workweeks of leave during any 12-month period for…a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612 (a)(1)(D), and, upon return from leave, the right to be restored by the employer to the position the employee held at the time leave was taken or to be restored to an equivalent position. 29 U.S.C. § 2614 (a)(1). There are two types of claims that can be asserted by an employee under the FMLA: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see 29 U.S.C. § 2615(a)(1),* and retaliation claims, in which an employee asserts that his employer discriminated

against him because he engaged in activity protected by the Act, *see 29 U.S.C. § 2615 (a)(1) &*
*(2); 29 C.F.R. § 825.220 (c)*." *Strickland v. Water Works & Sewer Board of the City of*
*Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001).  To state a claim for interference an
employee must demonstrate by a preponderance of the evidence that he was entitled to the
benefit denied. *Id. citing O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349,
1353—1354 (11th Cir. 2000).

Matthews' complaint alleges that Spring Lake's termination unlawfully interfered with
her rights under the FMLA because her absences from work on July 11 and July 14 to July 18,
2008, were protected by the FMLA and she was denied the right to return to work after taking
protected leave. In its motion for summary judgment, Spring Lake concedes that, as of June 13,
2008, Matthews was eligible for FMLA leave and that she suffered a serious medical condition
under the act. However, Spring Lake argues that Matthews was not denied FMLA benefits
because, regardless of her FMLA need for leave, she was terminated for violating Spring Lake's
Absenteeism and Tardiness policy. Accordingly, this Court will not evaluate whether Matthews'
absences qualified as leave under the FMLA, but only whether there is a genuine issue of
material fact regarding whether Matthews was denied a substantive right under the FMLA.  For
the reasons listed below, this Court finds that genuine issues exist.

When Matthews was terminated from Spring Lake, she was provided with a letter of
termination. This letter states Matthews was terminated for excessive absenteeism and references
the dates included on Matthews' first warning of May 19, 2008, and June 30, July 1, July 8, July
11, and July 14 to July 18, 2008, as Spring Lake's reason for termination. July 11 and July 14 to
July 18 are the days in which Matthews was hospitalized. While Spring Lake contends that these

days were not a factor in its decision to terminate Matthews, a question exists as to why the dates were included if the dates were not a basis for Matthews' dismissal. The deposition of Art Hutchins answers this question. Hutchins' testimony reveals that Matthews' consecutive absences in July were a factor in Spring Lake's decision to terminate Matthews. Based on this evidence, a reasonable jury could determine by a preponderance of the evidence that Matthews was denied the right to return to work after taking FMLA qualifying leave.

Regardless of the termination letter and Hutchins' deposition, Spring Lake argues that even if the July absences were a factor, it does not matter because, prior to her FMLA leave, Matthews had exceeded the number of occurrences allowed under Spring Lake's Absenteeism and Tardiness policy. Matthews' termination letter lists a total of twenty-two occurrences from January 2008 to July 2008. Subtracting the six days that Matthews missed because of her hospitalization and bed rest, a total of sixteen occurrences remain. But, Spring Lake's absentee policy states, "If an employee is absent for reason of personal illness, documented by a physician, the consecutive days of absence will be treated as a single occurrence." The termination letter reflects that Matthews had consecutive occurrences on March 27 and March 28, 2008, and on June 30 and July 1, 2008. For these dates, Matthews provided Spring Lake with two doctor's notes and thus should only be counted as one occurrence per consecutive date. Therefore, between January 2008 and July 2008, Matthews accrued a total of fourteen occurrences. According to Spring Lake's policy, an employee who accrues ten occurrences within a rolling twelve-month period will be terminated. Thus, Spring Lake has set forth evidence that Matthews accrued more than the allotted amount of occurrences prior to her hospitalization and, minus the FMLA absences, perhaps this justifies termination.

However, Matthews has come forth with evidence through Audra Stone's deposition that, prior to May 2008, Spring Lake's Absenteeism and Tardiness policy was not being enforced. According to Stone's testimony, employee absences and tardies were not being monitored and documented correctly. In order to be fair to all employees, Spring Lake decided to give employees experiencing attendance problems a "second chance" under the policy. According to Stone, the May 19, 2008, written warning that Matthews received was meant to serve as a second chance to fix her attendance problem. This warning listed a total of thirteen occurrences which happened between April and May 2008. The January, February, and March occurrences cited by the termination letter were not included in the initial warning.

While Stone's testimony does not specifically state that each employees' record was wiped clean of all prior absences and tardies, based on the common usage of the phrase "second chance," it can be inferred that all prior violations of the Absenteeism and Tardiness policy were not to be counted in the future. Excluding the FMLA qualifying dates, Matthews acquired a total of two occurrences prior to her need for leave, thus, negating Spring Lake's argument that Matthews' FMLA need for leave was not a factor in its decision to terminate her.

In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat,* 708 F.2d at 655. If the determination of the case rests on which competing version of the facts is true, the case should be submitted to the trier of fact. *Rollins,* 833 F.2d at 1531. After evaluating all the pleadings, depositions, and declarations put forth by both parties in the light most favorable to Matthews, a genuine issue of material fact exists regarding Spring Lake's purpose in terminating Matthews. While both parties put forth competing evidence as to the purpose behind Matthews' termination, this purpose will

ultimately determine whether Spring Lake interfered with Matthews' rights under the FMLA and should be submitted to the jury. Based on the evidence submitted, a reasonable jury could determine, by a preponderance of the evidence, that Matthews was denied the right to return to work after taking leave under the FMLA. Accordingly, judgment as a matter of law is inappropriate.

## <u>CONCLUSION</u>

As a result, this Court denies Defendant's Motion for Summary Judgment because genuine issues of material fact exist regarding Plaintiff's termination. Accordingly, it is:

**ORDERED** the Defendant's Motion for Summary Judgment be **DENIED** and this case will be set for pretrial and trial as soon as possible.

**DONE AND ORDERED** in Chambers, in Tampa Florida on this 27th day of October, 2009.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies To: All Parties and Counsel of Record.